**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| AIMEE POTTER, individually and on behalf of all others similarly situated, | : : : : | |
| Plaintiff, | : | Case No. 1:21-cv-05496 |
| vs. | : : | Hon. Elaine E. Bucklo |
| TARGET CORPORATION, | : : | |
| Defendant. | : : | |

**DEFENDANT TARGET CORPORATION'S MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL ARBITRATION, TRANSFER VENUE, OR DISMISS**

**BLANK ROME LLP**

*s/ Jeffrey N. Rosenthal*
Jeffrey N. Rosenthal
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
Tel.: (215) 569-5553
Fax: (215) 832-5533
Email: jeffrey.rosenthal@blankrome.com

Ana Tagvoryan
(*pro hac vice forthcoming*)
2029 Century Park East, Sixth Floor
Los Angeles, CA 90067
Tel.: (424) 239-3465
Fax: (424) 239-3690
Email: ana.tagvoryan@blankrome.com

David J. Oberly
(*pro hac vice forthcoming*)
1700 PNC Center
201 E. Fifth Street
Cincinnati, Ohio 45202
Tel.: (513) 362-8711
Fax: (513) 362-8798
Email: david.oberly@blankrome.com

*Attorneys for Defendant,
Target Corporation*

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION. ...................................................................................................1

II.   FACTUAL BACKGROUND. ..............................................................................2

    A.    The Agreements. ...........................................................................................2

III.  LEGAL STANDARD. ...........................................................................................6

    A.    Motion to Compel Arbitration under Rule 12(b)(3). ...............................6

IV.   ARGUMENT. ...........................................................................................................7

    A.    Preliminary State Choice-of-Law Analysis. .............................................7

    B.    The FAA Requires that this Dispute be Sent to Individual Arbitration.................8

        1.    The Arbitration Agreement Is Valid and Enforceable. ................................8

        2.    The Arbitration Agreement is Fair and Plaintiff's Claim Falls Within the Scope of the Arbitration Provision. .........................................12

    A.    In the Alternative, the Court Should Dismiss the Case or Transfer it to the District of Minnesota Pursuant to the Forum Selection Clause in the T&Cs.......................................................................................................14

V.    CONCLUSION.......................................................................................................15

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acaley v. Vimeo, Inc.*,
    464 F. Supp. 3d 959 (N.D. Ill. 2020) ................................................................. 9-11

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ..................................................................................... 7, 13

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*,
    571 U.S. 49 (2013) ............................................................................................ 14

*Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*,
    381 Ill. Dec. 493 (Ill. 2014) ............................................................................... 8

*CK Witco Corp. v. Paper Allied Indus.*,
    272 F.3d 419 (7th Cir. 2001) ............................................................................ 13

*Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*,
    417 F.3d 727 (7th Cir. 2005) .............................................................................. 6

*Corrigan v. Domestic Linen Supply Co.*,
    2012 WL 2977262 (N.D. Ill. July 20, 2012) .................................................. 7, 12

*Crooms v. Southwest Airlines*,
    459 F. Supp. 3d 1041 (N.D. Ill. 2020) ............................................................... 12

*DeJohn v. TV Corp. Int'l*,
    245 F. Supp. 2d 913 (N.D. Ill. 2003) ................................................................. 15

*East Lynn Fertilizers, Inc. v. CHS Inc.*,
    2010 WL 5070752 (C.D. Ill. Dec. 3, 2010) ..................................................... 8-9

*Essendant Co. v. Am. Prod. Distributors, Inc.*,
    2019 WL 4735406 (N.D. Ill. Sept. 27, 2019) .................................................... 15

*Fallo v. High-Tech Inst.*,
    559 F.3d 874 (8th Cir. 2009) .............................................................................. 7

*Faulkenberg v. CB Tax Franchise Sys., LP*,
    637 F.3d 801 (7th Cir. 2011) .............................................................................. 6

*Fischer v. Instant Checkmate LLC*,
    2021 U.S. Dist. LEXIS 133312 (N.D. Ill. July 19, 2021) ............................... 6, 9

*Flynn v. AerChem, Inc.*,
    102 F. Supp. 2d 1055 (S.D. Ind. 2000) .......................................................................... 11-12

*Foster v. Walmart, Inc.*,
    2021 U.S. App. LEXIS 30216 (8th Cir. Oct. 8, 2021) ............................................................9

*Friends for Health: Supporting N. Shore Health Ctr. v. PayPal, Inc.*,
    2018 WL 2933608 (N.D. Ill. June 12, 2018) ....................................................................6, 10

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991) ..............................................................................................................14

*Gore v. Alltel Commc'ns, LLC*,
    666 F.3d 1027 (7th Cir. 2012) ..............................................................................................8

*Gorny v. Wayfair Inc.*,
    2019 WL 2409595 (N.D. Ill. Jun. 7, 2019) ....................................................................9-10

*Gramercy Mills, Inc. v. Wolens*,
    63 F.3d 569 (7th Cir. 1995) ..................................................................................................7

*Green v. SuperShuttle Int'l, Inc.*,
    653 F.3d 766 (8th Cir. 2011) ...............................................................................................7

*Green Tree Fin. Corp.-Ala. v. Randolph*,
    531 U.S. 79 (2000) ..............................................................................................................12

*Hopkins v. Trans Union, LLC*,
    2004 U.S. Dist. LEXIS 16414 (D. Minn. Aug. 19, 2004) ..................................................15

*Hudson v. ConAgra Poultry Co.*,
    484 F.3d 496 (8th Cir. 2007) ......................................................................................... 13-14

*INTL FCStone Fin., Inc. v. Jacobson*,
    2021 U.S. Dist. LEXIS 188963 (N.D. Ill. Sep. 30, 2021) ..................................................13

*Janiga v. Questar Cap. Corp.*,
    615 F.3d 735 (7th Cir. 2010) ................................................................................................7

*K.F.C. v. Snap, Inc.*,
    2021 U.S. Dist. LEXIS 108695 (S.D. Ill. June 10, 2021) ...................................................12

*Kindred Nursing Ctrs. Ltd. P'ship v. Clark*,
    137 S. Ct. 1421 (2017) ..........................................................................................................9

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
    313 U.S. 487 (1941) ..............................................................................................................7

*Koresko v. RealNetworks, Inc.*,
    291 F. Supp. 2d 1157, (E.D. Cal. 2003) ...........................................................15

*Lamps Plus, Inc. v. Varela*,
    139 S. Ct. 1407 (2019)....................................................................................13

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017)..............................................................................11

*Miracle-Pond v. Shutterfly, Inc.*,
    2020 WL 2513099 (N.D. Ill. May 15, 2020) ...................................................8-10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983).............................................................................................13

*Novitsky v. Am. Consulting Engineers, LLC*,
    196 F.3d 699 (7th Cir. 1999) ..........................................................................11

*Olivastro v. Luxottica Retail N. Am. Inc.*,
    2019 WL 4277343 (E.D. Mo. Sep. 10, 2019)....................................................7

*Paragon Micro, Inc. v. Bundy*,
    22 F. Supp. 3d 880 (N.D. Ill. 2014) .................................................................14

*PRM Energy Sys. v. Primenergy, LLC*,
    592 F.3d 830 (8th Cir. 2010) ..........................................................................13

*Sgouros v. TransUnion Corp.*,
    817 F.3d 1029 (7th Cir. 2016) .......................................................................9-10

*Smith v. Cavalry Portfolio Servs. LLC*,
    2020 WL 7682236 (N.D. Ill. Dec. 26, 2020).....................................................7

*Sosa v. Onfido, Inc.*,
    2021 WL 3523197 (7th Cir. Aug. 11, 2021)......................................................8

*Soucy v. Capital Mgmt. Servs., LP*,
    2015 U.S. Dist. LEXIS 9991 (N.D. Ill. Jan. 29, 2015) .........................................14

*Thakkar v. ProctorU Inc.*,
    2021 U.S. Dist. LEXIS 227480 (C.D. Ill. Nov. 23, 2021)................................ 14-15

*TopstepTrader, LLC v. OneUp Trader, LLC*,
    2018 WL 1859040 (N.D. Ill. Apr. 18, 2018) .....................................................9

*United Fire & Cas. Co. v. Weber, Inc.*,
    434 F. Supp. 3d 729 (D. Minn. 2020)..............................................................15

iv

*Un. Steelworkers of Am. v. Warrior Gulf Nav. Co.*,
  363 U.S. 574 (1960) ................................................................................12

*Urb. Sites of Chi., LLC v. Crown Castle USA*,
  979 N.E.2d 480 (Ill. App. 2012) ...............................................................9

*Van Jackson v. Check 'N Go of Ill., Inc.*,
  193 F.R.D. 544 (N.D. Ill. 2000) ..............................................................13

*Van Tassell v. United Mkg. Ggp., LLC*,
  795 F. Supp. 2d 770 (N.D. Ill. 2011) ...................................................9-11

*Vargas v. Bay Terrace Plaza LLC*,
  378 F. Supp. 3d 190 (E.D.N.Y. 2019) .....................................................12

*Welborn Clinic v. MedQuist, Inc.*,
  301 F.3d 634 (7th Cir. 2002) ....................................................................13

*Whisler v. H.J. Meyers & Co.*,
  948 F. Supp. 798 (N.D. Ill. 1996) (Bucklo, J.) .........................................8

*Wilcosky v. Amazon.com, Inc.*,
  2021 WL 410705 (N.D. Ill. Feb. 5, 2021) .....................................6, 8, 12

*Zurich Am. Ins. Co. v. Watts Indus., Inc.*,
  417 F.3d 682 (7th Cir. 2005) ......................................................................7

**Statutes**

9 U.S.C. § 3 .....................................................................................................6, 14

9 U.S.C. § 4 ..........................................................................................................8

28 U.S.C. § 1332 ...................................................................................................7

28 U.S.C. § 1404(a) ........................................................................................14-15

**Other Authorities**

FRCP 12(b)(1) ................................................................................................6, 14

FRCP 12(b)(3) ................................................................................................6, 14

v

Defendant Target Corporation ("Target"), pursuant to Federal Rules 12(b)(1) and 12(b)(3), and the Federal Arbitration Act, 9 U.S.C. §§ 1-14, hereby moves this Court for an order compelling arbitration and dismissing and/or staying this action. In the alternative, Target moves to have this case transferred to the District of Minnesota under 28 U.S.C. § 1404(a).

## I.      INTRODUCTION.

In this putative class action, Plaintiff Aimee Potter ("Plaintiff") claims her and others' "biometric identifiers" or "biometric information" were improperly collected by Target's software and an application that allows customers to use their smartphone or computer device to virtually "try on" certain cosmetic products sold by Target. Plaintiff specifically alleges Target's virtual try-on ("VTO") feature violates the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq.* But Plaintiff—a longtime customer of Target—specifically, and on multiple occasions, agreed to Target's Terms and Conditions ("T&Cs") for accessing and using the VTO feature on both Target's website and through the Target smartphone application ("Target App"). This agreement requires Plaintiff to arbitrate any claims against Target on an individual, non-class basis—and to do so under Minnesota law. Further, Plaintiff also agreed should litigation proceed, it would be filed exclusively in the courts of Minneapolis, Minnesota where Target is based.

Courts routinely compel arbitration and/or dismiss claims when a plaintiff affirmatively agreed to arbitration through a "clickwrap" process by signing-in or completing transactions online with clear notice of the operative terms. Under the Federal Arbitration Act ("FAA"), the Court must compel arbitration or find venue is improper under these facts where a valid agreement exists. Equally important, because the arbitration provision (independently, "Arbitration Agreement") incorporates the rules of the American Arbitration Association ("AAA"), questions regarding arbitrability are for the arbitrator to decide.

163036.00601/127746257v.1

Even if the Court finds Plaintiff's claims are not subject to arbitration, it should transfer venue based on the forum-selection clause. Matters of convenience/practicality also dictate Minnesota federal courts are more suited to hear this case.

## II.     FACTUAL BACKGROUND.

Plaintiff Aimee Potter filed her *Class Action Complaint* in the Cook County Circuit Court on September 10, 2021 (removed to this Court on October 15, 2021). ECF No. 1-2. Plaintiff alleges she visited a Target store at 2656 N. Elston Ave., Chicago, IL on September 8, 2021. *Id.* ¶ 15. It was during this visit Plaintiff allegedly used Target's VTO feature on her smartphone application "to virtually 'try on' the lipstick" she had selected. *Id.* At that time, Plaintiff states she had been a "long-time customer of Target," and was a "registered user of the Target application since in or around 2018." *Id.* ¶ 14.

Target's records confirm Plaintiff has been a Target customer since at least 2012. Plaintiff created an account with Target via its website on or around April 29, 2012; made purchases online, including on September 6, 2017 and May 24, 2018; and downloaded, and signed-in through the same account to use the Target App on her mobile device in 2018 and thereafter. *See* Declaration of F. Mankovich, ("Mankovich Dec."), ¶ 10; Declaration of C. Cook ("Cook Dec."), ¶ 15.

### A.     The Agreements.

Plaintiff affirmatively clicked to agree to Target's T&Cs several times through her dealings with Target. According to Target's business records, Plaintiff made purchases from Target's website—www.target.com—on at least September 6, 2017 and May 24, 2018.[1] Mankovich Decl. ¶ 10. Critically, starting in February 2017, all Target guests had to sign in or create an online

---

[1] A true and correct copy of the May 24, 2018, full Terms and Conditions in effect at the time of Plaintiff's May 2018 purchase is attached to the Cook Declaration as **Exhibit C**.

account to check out and complete a purchase, in a manner similar to that displayed below on both the mobile website version and full site version:



*See* Cook Dec. ¶ 12. To complete an order, customers must affirmatively click the red button that says, "Place your order." Directly above that red button was text stating: "By placing an order, you agree to Target's <u>terms</u> and <u>privacy policy</u>." Both the "terms" and "privacy policy" are blue, underlined hyperlinks; clicking the "terms" link takes Plaintiff to the online T&Cs, as follows:



3

In addition to notice and acceptance of the T&Cs through Target's website, Plaintiff was also provided notice of, and agreed to, the T&Cs upon using the Target App starting in November 2018.  After the "Welcome page," Plaintiff logged-in to her account via the Target App as follows:



The language on this screen page states: "By signing in, you agree to the following: <u>Target terms and conditions</u>[;] <u>Target privacy policy</u>[.]"  Both the "Target terms and conditions" and the "Target privacy policy" are live hyperlinks offset in blue text and underlined.  Clicking the 'terms and conditions' link would take Plaintiff to the same T&Cs page inserted above.[2]  Cook Dec. ¶ 8.

As can be seen, *supra*, the first section of the T&Cs clearly states Plaintiff's "use of this website is governed by these terms & conditions," and explains that by "accessing or using" the

---

[2]  A true and correct copy of the T&Cs in effect at the time Plaintiff alleges she first used the Target App in November 2018, is attached to the Cook Declaration as **Exhibit B**.  When the T&Cs were again updated in July 2021, Cook ¶ 17, they were available to Plaintiff through her continued use of the Target App—including in September 2021.  A true and correct copy of the July 2021 T&Cs are attached to the Cook Declaration as **Exhibit D**.  While the Arbitration Agreement in the 2021 T&Cs is worded and structured differently, the substantive terms are the same as those in 2018.

website located at www.target.com and all other sites, mobile sites, services, *applications*, platforms and tools, Plaintiff "agree[s]" to the T&Cs. Cook Dec., Ex. B at 1. The second full paragraph further explains—in clear, conspicuous, *capitalized letters*—how the T&C's "contain" an Arbitration Agreement "requir[ing]" individual arbitration. *Id.* This section further states "if at any time you do not accept all of these Terms & Conditions, you must immediately stop using" the website, services, applications, platforms and tools. *Id.*

The section of the T&Cs regarding "disputes" states as follows:

**disputes**

YOU AND TARGET AGREE THAT IN THE EVENT OF ANY CLAIM, DISPUTE, OR CONTROVERSY (WHETHER IN CONTRACT, TORT, OR OTHERWISE) ARISING OUT OF, RELATING TO, OR CONNECTED IN ANY WAY WITH THE SITE, OR THE BREACH, ENFORCEMENT, INTERPRETATION, OR VALIDITY OF THESE TERMS & CONDITIONS, SUCH CLAIM, DISPUTE OR CONTROVERSY WILL BE RESOLVED EXCLUSIVELY BY FINAL AND BINDING ARBITRATION[.]

. . . .

YOU AGREE THAT ALL MATTERS RELATING TO YOUR ACCESS TO OR USE OF THE SITE AND ALL MATTERS ARISING OUT OF OR RELATED TO THESE TERMS & CONDITIONS, INCLUDING ALL DISPUTES, WILL BE GOVERNED BY THE LAWS OF THE FEDERAL ARBITRATION ACT (FAA), THE APPLICABLE LAWS OF THE UNITED STATES OF AMERICA, AND THE LAWS OF THE STATE OF MINNESOTA, WITHOUT REGARD TO MINNESOTA'S CHOICE OF LAW PRINCIPLES. UNLESS YOU AND TARGET AGREE OTHERWISE, IN THE EVENT THAT IT IS DETERMINED OR THESE TERMS & CONDITIONS PROVIDE THAT A CLAIM SHOULD NOT PROCEED THROUGH ARBITRATION, YOU AGREE THAT ANY CLAIM OR DISPUTE . . . SHALL BE RESOLVED IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA, AND YOU SUBMIT TO THE PERSONAL JURISDICTION OF THAT COURT. IF SUBJECT MATTER JURISDICTION (INCLUDING DIVERSITY JURISDICTION) DOES NOT EXIST IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA FOR ANY SUCH CLAIM, THEN THE EXCLUSIVE FORUM AND VENUE FOR ANY SUCH ACTION SHALL BE THE COURTS OF THE STATE OF MINNESOTA LOCATED IN HENNEPIN COUNTY, AND

5

YOU SUBMIT TO THE PERSONAL JURISDICTION OF THAT COURT. . . .

THE MAKING OF CLAIMS OR RESOLUTION OF DISPUTES PURSUANT TO THIS AGREEMENT SHALL BE IN YOUR INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. YOU AGREE THAT TO THE EXTENT PERMITTED BY APPLICABLE LAW: (1) ANY AND ALL DISPUTES, CLAIMS, AND CAUSES OF ACTION ARISING OUT OF OR CONNECTED WITH THE SITE AND/OR THESE TERMS & CONDITIONS WILL BE RESOLVED INDIVIDUALLY IN THE FORUM DESIGNATED IN THIS DISPUTES SECTION, WITHOUT RESORT TO ANY FORM OF CLASS ACTION; AND, (2) EXCEPT FOR NEW JERSEY RESIDENTS AND WHERE OTHERWISE PROHIBITED BY LAW, ANY AND ALL CLAIMS, JUDGMENTS, AND AWARDS WILL BE LIMITED TO ACTUAL THIRD-PARTY, OUT-OF-POCKET COSTS INCURRED (IF ANY), BUT IN NO EVENT WILL ATTORNEYS' FEES BE AWARDED OR RECOVERABLE.

*Id.* at 20-21.

### III. LEGAL STANDARD.

### A. <u>Motion to Compel Arbitration under Rule 12(b)(3).</u>

"A motion to dismiss based on a contractual arbitration clause is appropriately 'conceptualized as an objection to venue, and hence properly raised under Rule 12(b)(3).'" *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 807 (7th Cir. 2011); 9 U.S.C. § 3.[3]

Subject to certain exceptions not at issue here, the FAA, 9 U.S.C. § 1 *et seq.*, governs arbitration agreements in contracts involving interstate commerce. The FAA reflects both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of

---

[3] In reviewing a Rule 12(b)(3) motion, a court is "not obligated to limit its consideration to the pleadings nor convert the motion to one for summary judgment." *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005). Rather, it may consider exhibits and affidavits regarding the arbitration agreement. *Friends for Health: Supporting N. Shore Health Ctr. v. PayPal, Inc.*, 2018 WL 2933608, at *3 (N.D. Ill. June 12, 2018). "[E]vidence of the non-movant is to be believed and all justifiable inferences" drawn in her favor. *Fischer v. Instant Checkmate LLC*, 2021 U.S. Dist. LEXIS 133312, at *2 (N.D. Ill. July 19, 2021) (citation omitted). Nevertheless, a plaintiff bears the burden of establishing venue is proper. *Wilcosky v. Amazon.com, Inc.*, 2021 WL 410705, at *3 (N.D. Ill. Feb. 5, 2021) (citation omitted).

contract. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). "[A]rbitration should be compelled if three elements are present: (1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *Smith v. Cavalry Portfolio Servs. LLC*, 2020 WL 7682236, at *1 (N.D. Ill. Dec. 26, 2020) (citing 9 U.S.C. § 4); *Zurich Am. Ins. Co. v. Watts Indus., Inc*., 417 F.3d 682 (7th Cir. 2005). However, "[w]hen the AAA Rules are incorporated into" the arbitration provision courts have held "the parties agreed to allow the arbitrator to determine threshold questions of arbitrability." *Olivastro v. Luxottica Retail N. Am. Inc.*, 2019 WL 4277343 (E.D. Mo. Sep. 10, 2019) (citing *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769 (8th Cir. 2011)); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009) (contract's incorporation of AAA jurisdiction rule "constitute[d] a clear and unmistakable expression" of intent to leave arbitrability question to arbitrator); *Corrigan v. Domestic Linen Supply Co.*, 2012 WL 2977262, at *2 (N.D. Ill. July 20, 2012) ("when parties agree in a valid arbitration agreement that the AAA's rules apply, an arbitrator should decide the scope of arbitrability"). Such "gateway" issues of arbitrability follow a determination a contract was indeed formed between the parties. *Janiga v. Questar Cap. Corp.*, 615 F.3d 735, 738 (7th Cir. 2010).

## IV.     ARGUMENT.

### A.     Preliminary State Choice-of-Law Analysis.

Before the Court can determine if a valid contract exists, it must decide which state's law applies to the issue of contract formation. This case was removed under CAFA, which is part of the diversity jurisdiction statute. 28 U.S.C. § 1332. A district court applies the choice-of-law rules of the state in which it sits in a diversity case. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Gramercy Mills, Inc. v. Wolens,* 63 F.3d 569, 572 (7th Cir. 1995). Thus, this Court should follow Illinois choice-of-law rules to decide which state law applies to contract formation.

Under Illinois choice-of-law rules, forum law is applied "unless an actual conflict with another state's law is shown, or the parties agree that forum law does not apply." *Sosa v. Onfido, Inc.*, 2021 WL 3523197, at *4 (7th Cir. Aug. 11, 2021) (citation omitted); *Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*, 381 Ill. Dec. 493, 497 (Ill. 2014) ("choice-of-law determination is required only when a difference in law will make a difference in the outcome.") (quotation omitted). Courts in the Seventh Circuit have held "there is no material difference between Illinois and Minnesota law" as to contract formation. *East Lynn Fertilizers, Inc. v. CHS Inc.*, 2010 WL 5070752, at *4 (C.D. Ill. Dec. 3, 2010). Thus, Illinois law may apply to contract formation issues. *Miracle-Pond v. Shutterfly, Inc.*, 2020 WL 2513099, at *3 n.3 (N.D. Ill. May 15, 2020) (analyzing two issues relating to online arbitration agreement under Illinois law where law of the forum state and other state from choice of law provision did not compel different result).

### B.   The FAA Requires that this Dispute be Sent to Individual Arbitration.

Plaintiff's claims must be arbitrated per her affirmative acceptance of the T&Cs, which is a valid and enforceable contract under both the FAA[4] as well as Seventh Circuit jurisprudence.

#### 1.   The Arbitration Agreement Is Valid and Enforceable.

In determining whether a valid arbitration agreement exists, federal courts apply state law principles of contract formation. *Whisler v. H.J. Meyers & Co.*, 948 F. Supp. 798, 800 (N.D. Ill. 1996) (Bucklo, J.); *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012). But only "generally applicable" contract doctrines apply; the FAA preempts state-law rules that

---

[4] The party seeking to compel arbitration has the burden of establishing an agreement to arbitrate. *Wilcosky*, 517 F. Supp. 3d at 759 (citing 9 U.S.C. § 4). "Once the party seeking to compel has done so, the party resisting arbitration bears the burden of identifying a triable issue of fact[.]" *Id.* (citations omitted). Importantly, "[t]he resisting party's evidentiary burden is like that of a party opposing summary judgment"—in that they "cannot avoid compelled arbitration by generally denying the facts," and "must identify specific evidence in the record demonstrating a material factual dispute[.]" *Id.* (citations omitted).

discriminate against or disfavor arbitration. *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct.

1421, 1426 (2017); *Gorny v. Wayfair Inc.*, 2019 WL 2409595, at *2 (N.D. Ill. Jun. 7, 2019).

"Illinois contract law requires that a website provide a user reasonable notice that his use

of the site or click on a button constitutes assent to an agreement."[5] *Acaley v. Vimeo, Inc.*, 464 F.

Supp. 3d 959, 965 (N.D. Ill. 2020) (citing *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1036 (7th

Cir. 2016)). "The inquiry is an objective one, measured from the perspective of 'a reasonable

person in [the consumer's] shoes.'" *Fischer*, 2021 U.S. Dist. LEXIS 133312, at *13; *Urb. Sites of

Chi., LLC v. Crown Castle USA*, 979 N.E.2d 480, 496 (Ill. App. 2012) ("Generally, it is the

objective manifestation of intent that controls whether a contract has been formed. The subjective

understanding of the parties is not required in order for there to be a meeting of the minds.")

(citation omitted). Because the test is objective, "a party to an internet transaction may lack actual

knowledge of additional terms and conditions, [but] nonetheless have constructive knowledge . . .

where the website provides clear and conspicuous notice[.]" *Van Tassell v. United Mkg. Ggp.,

LLC*, 795 F. Supp. 2d 770, 790 (N.D. Ill. 2011).

Here, under these generally accepted principles, Plaintiff accepted the Arbitration

Agreement and "dispute" clause in Target's T&Cs when she: (1) clicked the red "Place your order"

button to buy product online from Target in 2018; and/or (2) clicked the red "Sign in" button to

access her account on the Target App in 2018 and, by extension, access the VTO feature in 2021.

Several courts have found this exact type of conduct sufficient to bind users to online terms

and conditions as a "clickwrap agreement."[6] *Fischer*, 2021 WL 3033586, at *5 (finding valid

---

[5] The test would be the same under Minnesota law. *East Lynn Fertilizers, Inc.*, 2010 WL 5070752, at *4.

[6] A "clickwrap" agreement is formed when a website user clicks a button that explicitly affirms the user has accepted the terms after having the opportunity to review the terms posed on the website. *Miracle-Pond*, 2020 WL 2513099, at *4 (citing *TopstepTrader, LLC v. OneUp Trader, LLC*, 2018 WL 1859040, at *2 (N.D. Ill. Apr. 18, 2018)); *see also Foster v. Walmart, Inc.*, 2021 U.S. App. LEXIS 30216, at *6 (8th Cir. Oct. 8, 2021) ("courts rarely find problems with clickwrap agreements"). Conversely, a "browsewrap"

clickwrap agreement when plaintiff registered their account on webpage instructing that "By clicking 'Continue' you represent that you . . . have agreed to our terms of use"); *Gorny*, 2019 WL 2409595, at *6 (enforcing arbitration agreement under Illinois law where plaintiff agreed to hyperlinked terms containing arbitration agreement when clicking a "Place Your Order" button).

Indeed, "[c]ourts around the country have recognized that [an] electronic 'click' can suffice to signify the acceptance of a contract," and that "[t]here is nothing automatically offensive about such agreements, as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement." *Sgouros*, 817 F.3d at 1033-34 (collecting cases). In "regularly uphold[ing]" the validity of "clickwrap" agreements, courts have held making the terms and conditions of an agreement available by hyperlink—as Target did on the Target App and website, which Plaintiff used—constitutes reasonable notice. *Van Tassell*, 795 F. Supp. 2d at 79; *Friends for Health*, 2018 WL 2933608, at *5.

The recent case of *Acaley v. Vimeo, Inc.*, 464 F. Supp. 3d at 966, is particularly instructive. There, this Court held (in the context of a similar BIPA class action) that:

> In this case, Acaley received reasonable notice on at least two occasions that his use of the Magisto app constituted assent to its terms of service. First, he received such notice when he initially opened the app and viewed its welcome page, where, as indicated, the following statement appeared: 'By continuing I agree to the terms.' This statement, like the one that appeared on several webpages in *Hubbert*, would place a reasonable person on notice that there were terms and conditions connected to his or her continued use of the app. In addition, Acaley received reasonable notice that he was assenting to Magisto's terms of service when he signed up for the free subscription plan trial via a web browser on his iPad. As indicated, he accessed a webpage that featured a button with the text 'Create account' and, directly below that, in smaller but still conspicuous font, displayed a statement that read: 'By starting you agree to our terms and privacy policy,' with hyperlinks to the respective documents. That statement would put a

---

agreement—not present here—is an agreement whereby users are bound by the website's terms by merely navigating or using the website; the user is not required to sign an electronic document or explicitly click an "accept" or "I agree" button. *Miracle-Pond*, 2020 WL 2513099, at *4.

> reasonable person on notice that there were terms and conditions connected
> to the creating [of] an account.

*Id.*[7] Here, as in *Acaley*, *Fischer*, and *Groey*, both the Target App's "Sign In" page and its online order page presented Plaintiff with clear, conspicuous notice of a "clickwrap agreement" requiring affirmative acts of consent. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 79 (2d Cir. 2017) ("'[b]y creating an Uber account, you agree' is a clear prompt directing users to read the Terms and Conditions and signaling that their acceptance of the benefit of registration would be subject to contractual terms."). Plaintiff gave this assent and agreed disputes arising from her use of Target's sites, tools, and applications would be heard in specific tribunals—none of which contemplate Illinois. To be sure, not only was Plaintiff on notice the operative T&Cs applied to her web-based dealings with Target, she was also provided express notice of the Arbitration Agreement at the top of the first page of the T&Cs landing page, without having to scroll, which read:

> PLEASE READ THE FOLLOWING CAREFULLY AS IT AFFECTS
> YOUR LEGAL RIGHTS. THESE TERMS & CONDITIONS CONTAIN
> AN AGREEMENT TO ARBITRATE THAT REQUIRES THE USE OF
> ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE
> DISPUTES RATHER THAN JURY OR ANY OTHER COURT
> PROCEEDINGS OR CLASS ACTIONS OF ANY KIND.

Ex. B at 1. Thus, any assertion by Plaintiff that the Arbitration Agreement came later in the T&Cs webpage, or that she had to scroll to find it, would be meritless. *Cf. Van Tassell*, 795 F. Supp. 2d at 792 (noting a "user only encounters the Conditions of Use after scrolling to the bottom of the home page" or clicking another link first). Moreover, it was Plaintiff's responsibility to read the agreement; she cannot complain if she failed to do so. *Novitsky v. Am. Consulting Engineers, LLC*, 196 F.3d 699, 702 (7th Cir. 1999) ("People are free to sign legal documents without reading them, but the documents are binding whether read or not."); *Flynn v. AerChem, Inc.*, 102 F. Supp. 2d

---

[7] *Acaley* ultimately denied Vimeo's motion where plaintiff's BIPA claim was found to fall outside the scope of the arbitration provision due to "exclusions" for certain types of claims not seen here. *Id.* at *25.

1055, 1060 (S.D. Ind. 2000) ("lack of understanding or failure to read the contract's provisions does not relieve a party from the terms of that agreement").

Thus, Plaintiff entered into a valid contract with Target via her acceptance of the T&Cs, of which she had sufficient notice under the law.  Not only do the T&Cs include an Arbitration Agreement, but such agreement states: "[t]he arbitration will be conducted under the then current rules of the [American Arbitration Association]."  Cook Dec., Ex. B at 20.  Under Seventh Circuit precedent, then, whether the agreement is enforceable (*i.e.*, under "unconscionability" standards), as well as whether her claims fall within its scope, are *for the arbitrator to decide.  Wilcosky*, 517 F. Supp. 3d at 768; *Vargas v. Bay Terrace Plaza LLC*, 378 F. Supp. 3d 190, 195 (E.D.N.Y. 2019); *Corrigan*, 2012 WL 2977262, at *2; *K.F.C. v. Snap, Inc.*, 2021 U.S. Dist. LEXIS 108695, at *6-7 (S.D. Ill. June 10, 2021) ("Snap's incorporation of the AAA's rules provides clear and unmistakable evidence of intent to delegate threshold issues of the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim to the arbitrator.") (citations omitted).

### 2.    The Arbitration Agreement is Fair and Plaintiff's Claim Falls Within the Scope of the Arbitration Provision.

To the extent the Court finds the issue of arbitrability more suitable for determination here, there is a thumb on the arbitration side of the scale once it has been established a valid, enforceable arbitration agreement exists.  *Crooms v. Southwest Airlines*, 459 F. Supp. 3d 1041, 1054 (N.D. Ill. 2020).  In this regard, once a valid agreement has been established, the party opposing arbitration bears the burden of demonstrating the claims do not fall within the terms of the agreement or the contract is otherwise void. *Id.* (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000)).  Request for arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* (citing *Un. Steelworkers of Am. v. Warrior Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960)).

The Seventh Circuit has recognized if an arbitration provision is broad, as it is here, a presumption of arbitrability attaches; arbitration of even a collateral matter will be ordered if the claim implicates issues of contract construction or the parties' rights/obligations. *Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 639 (7th Cir. 2002); *Van Jackson v. Check 'N Go of Ill., Inc.*, 193 F.R.D. 544, 549 (N.D. Ill. 2000) (Bucklo, J.) (noting a "strong presumption in favor of arbitrability."); *INTL FCStone Fin., Inc. v. Jacobson*, 2021 U.S. Dist. LEXIS 188963, at *26 (N.D. Ill. Sep. 30, 2021) ("no question that the arbitration agreement's 'arising out of' language creates a presumption of arbitrability."); *CK Witco Corp. v. Paper Allied Indus.*, 272 F.3d 419, 421-22 (7th Cir. 2001) ("courts have no choice but to order arbitration" where clause covers the dispute).

The instant Arbitration Agreement language is extremely broad and covers "ANY CLAIM, DISPUTE, OR CONTROVERSY (WHETHER IN CONTRACT, TORT, OR OTHERWISE) ARISING OUT OF, RELATING TO, OR CONNECTED IN ANY WAY WITH THE SITE[.]" Cook Dec., Ex. B at 20. The Target App and VTO feature fall squarely under the term "Sites."[8] But even if there are "any doubts concerning the scope of arbitrable issues"—and there are none— they would have to be "resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). The FAA requires ambiguities about the applicable scope be resolved in favor of arbitration. *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1418 (2019). Due to the strong federal policy favoring enforcement, *AT&T Mobility LLC*, 563 U.S. at 546, and the Arbitration Agreement's unambiguous language as covering Plaintiff's BIPA claims,[9] Plaintiff is

---

[8] *Id.* at 1 (defining "Site" as "the Target website located at www.target.com and all other sites, mobile sites, services, applications, platforms and tools where these Terms & Conditions appear or are linked.").

[9] *Accord PRM Energy Sys. v. Primenergy, LLC*, 592 F.3d 830, 837 (8th Cir. 2010) ("Arbitration may be compelled under a broad arbitration clause . . . as long as the underlying factual allegations simply touch matters covered by the arbitration provision. It generally does not matter that claims sound in tort, rather than contract."); *Hudson v. ConAgra Poultry Co.*, 484 F.3d 496, 499-500 (8th Cir. 2007) ("we generally construe broad language in a contractual arbitration provision to include tort claims arising from the contractual relationship.").

13

must resolve her claim in individual arbitration.  *Paragon Micro, Inc. v. Bundy*, 22 F. Supp. 3d 880, 892 (N.D. Ill. 2014) (interpreting an arbitration clause encompassing "any and all disputes" arising out of related to agreement and finding statutory claims covered).

Because all Plaintiff's claims are subject to arbitration, this case should be dismissed under Rule 12(b)(3) for improper venue.  *Soucy v. Capital Mgmt. Servs., LP*, 2015 U.S. Dist. LEXIS 9991, at *16 (N.D. Ill. Jan. 29, 2015).  The Seventh Circuit has "repeatedly affirmed district courts' decisions dismissing suits where all of the claims must be arbitrated' under the agreement." *Id.*[10]

### A.    In the Alternative, the Court Should Dismiss the Case or Transfer it to the District of Minnesota Pursuant to the Forum Selection Clause in the T&Cs.

A forum-selection clause in a parties' contract may be enforced by a motion to transfer under 28 U.S.C. § 1404(a).  District courts must give a valid forum selection clause controlling weight, absent "extraordinary circumstances." *Thakkar v. ProctorU Inc.*, 2021 U.S. Dist. LEXIS 227480, at *8 (C.D. Ill. Nov. 23, 2021) ("Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied" when there is a valid forum-selection clause).  Where a valid forum selection clause exists and selects a forum other than the one in which the case was filed, a court may not consider any "private interest" factors. *Id.*  Instead, it may only weigh "public interest" factors to determine if they overwhelmingly weigh against transfer to the court designated by the forum selection clause. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 58-63 (2013).  If a valid forum selection clause requires that the parties litigate a dispute in a different forum, courts typically order transfer to that forum.

Here, if this case was to not proceed in arbitration (which it should), Plaintiff agreed "any claim or dispute" involving the Sites "*shall be resolved*" in the District of Minnesota.  Ex. B at 21

---

[10]  In the alternative, the case should be stayed under the FAA, which allows courts to stay litigation pending the resolution of arbitration.  9 U.S.C. § 3; *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991).

(emphasis added). This provision is valid and enforceable. *See, e.g., Hopkins v. Trans Union, LLC*, 2004 U.S. Dist. LEXIS 16414, at *8 (D. Minn. Aug. 19, 2004) ("Numerous courts have found that forum selection clauses contained within so-called 'clickwrap' agreements . . . are valid.") (citing *Koresko v. RealNetworks, Inc.*, 291 F. Supp. 2d 1157, 1162-63 (E.D. Cal. 2003); *DeJohn v. TV Corp. Int'l*, 245 F. Supp. 2d 913, 921 (N.D. Ill. 2003).[11] There are no "extraordinary circumstances" or other public interest factors preventing the instant forum selection clause from being enforced. *Thakkar*, 2021 U.S. Dist. LEXIS 227480, at *20-21 (transferring BIPA case from Illinois to Alabama federal court per the mandates of the parties' valid forum selection clause).

Lastly, to the extent the Court finds an agreement between the parties does not exist by virtue of the T&Cs, or that the venue provision is somehow unenforceable (which it is not), the Court should still consider the conveniences and justice of the matter and transfer the case to Minnesota. Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" Here, Target's headquarters are in Minnesota, as are the software and server at issue; all witnesses and employees in the various departments familiar with the web-based consumer facing applications and sites are there as well. Cook Dec., ¶ 19. Thus, transfer to the District of Minnesota would independently be proper here under 28 U.S.C. § 1404(a).

## V.     CONCLUSION.

For the above reasons, Defendant Target Corporation respectfully requests that this Court enter an Order dismissing the complaint, staying the case pending arbitration, or transferring.

---

[11] Both "federal and Minnesota law consider forum selection clauses to be *prima facie* valid, and enforce them unless they are unjust, unreasonable, or invalid." *United Fire & Cas. Co. v. Weber, Inc.*, 434 F. Supp. 3d 729, 732 (D. Minn. 2020); *Essendant Co. v. Am. Prod. Distributors, Inc.*, 2019 WL 4735406, at *3 (N.D. Ill. Sept. 27, 2019) (choice-of-law designated in contract governs forum selection clause) (Bucklo, J.).

Respectfully submitted,

**DATED**: December 20, 2021          **BLANK ROME LLP**

*s/ Jeffrey N. Rosenthal*
Jeffrey N. Rosenthal
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
Tel.: (215) 569-5553
Fax: (215) 832-5533
Email: jeffrey.rosenthal@blankrome.com

Ana Tagvoryan
(*pro hac vice forthcoming*)
2029 Century Park East, Sixth Floor
Los Angeles, CA 90067
Tel.: (424) 239-3465
Fax: (424) 239-3690
Email: ana.tagvoryan@blankrome.com

David J. Oberly
(*pro hac vice forthcoming*)
1700 PNC Center
201 E. Fifth Street
Cincinnati, Ohio 45202
Tel.: (513) 362-8711
Fax: (513) 362-8798
Email: david.oberly@blankrome.com

*Attorneys for Defendant,*
*Target Corporation*

16

## <u>CERTIFICATE OF SERVICE</u>

I, Jeffrey N. Rosenthal, hereby certify that, on December 20, 2021, I electronically filed the foregoing Memorandum of Law in Support of Motion to Compel Arbitration, Transfer, or Dismiss of Defendant Target Corporation with the Court via the ECF System, it is available for viewing and downloading from the ECF system, and a true and correct copy was served to all counsel of record registered with the ECF system.

**BLANK ROME LLP**

*s/ Jeffrey N. Rosenthal*
Jeffrey N. Rosenthal

*Attorney for Defendant,*
*Target Corporation*

17